Good morning, Your Honors. My name is Cammie Woodward, and I represent the defendant appellant in this case. What we have here, Your Honors, is, at the very least, a failure of proof. Interestingly enough, at the very beginning of the sentencing hearing, the District Court had it right. The District Court asked each side if they knew what the controlling case law in this circuit with regard to that enhancement was. It named Jimmison and Noster. When the government said it wasn't familiar with the cases, he went on to explain the concept of firm intent, and then said, Mr. Zink, who was prosecuting, you bear the burden of giving me some evidence to prove that Mr. Chadwell had the firm intent of using these firearms in connection with the distribution of drugs. And with that, the government called Officer Ward. Officer Ward, as the court knows, is the one who conducted the traffic stop. He said that he developed no evidence that showed Chadwell had a firm intent of using those firearms to possess that cocaine in that car. What he did establish was simply proximity. He didn't say, wasn't the gun within arm's reach? Interestingly enough, the cop couldn't remember where the gun was, which I find intriguing because cops typically remember that detail. They said they thought it was in the middle of both of them. And the drugs were at his feet? Two bags? That's allegedly, yes. And your client was arrested for selling drugs 11 days previous to this event? Correct. Yes. Okay, but proximity and the potential emboldening role, Your Honor, as you know, the knife added an additional layer, which was firm intent. So Mr. Zink called Officer Husky, who conducted that controlled buy that you just spoke of 11 days prior. He wired up a CI. He did a pre and debriefing. And on the stand, he said that, no, he did not see any guns. He did not hear about any guns in connection with that controlled buy of the same drug. No guns whatsoever. Excuse me, counsel, but could you address the first argument, the argument with respect to the tapes? Go ahead. Well, I want to ask you one more question about that particular argument. It seemed to me there was one other fact that was pretty good for what the district court did, and that is it seemed by reading the evidence that the defendant made every effort to keep the police from finding the gun. That's correct, Your Honor. So we had the buy. We had the defendant was under restraining order for threats of violence. We had the gun in the close proximity. And we had the defendant making every effort to keep the police from finding the gun. And now I'm supposed to determine that this was clear error? No, Your Honor. I believe it was an abuse of discretion. Abuse of discretion. Abuse of discretion because it's the application of the guidelines to the facts. And I guess I'm having a tough time. I think that both officers, one established proximity. One established the emboldening role in his experience. All drug dealers or most drug dealers use the drugs to protect themselves or use the guns to protect themselves or the drugs. And then we have the issue of firm intent. Now, with regard to your question about he made every effort to keep the cops out of the car, like I said in my brief, you know, he knows having guns is illegal. He knows having cocaine is illegal. Like I said, why must we assume that he doesn't want to get caught having formed a firm intent? I mean, he might not have wanted them to find the guns, the drugs, or maybe both. But firm intent, we don't, in my opinion, we don't have any evidence of firm intent here. All right. So now you can turn to my good colleagues. What about the first issue? Yeah, the watch guard video. Essentially it was the government's case. And the officer's testimony, other than saying, yes, that was me, that was him, was essentially cumulative because they testified to exactly that which was shown in the video. So the jury heard, I'm sorry. Excuse me, counsel. Is it fair to say that there's no dispute that the video was properly received into evidence? That's correct, Your Honor. All right. And in this instance, the video was sent into the jury room. And unlike Capu and Phyllis O'Drodd, Rodriguez and Brown, there was no one else present in the jury room while the tapes were, assuming they were played, there was nobody else present while the tapes were played. Is that right? That's right. And the tape, the video, was played to the jury during the trial. Is that correct? It was played during the trial, yes. And so are you aware, are there any cases in the Ninth Circuit that hold where a video is properly received into evidence, is played before the jury during the trial, and is sent into the jury room, and no one else is present? Is there any case in the Ninth Circuit that says that is error? Not that I could find, Your Honor, no. And is there any case in any other circuit that you're aware of that says that that is error? Not that I could find, no. So would we be the first court to hold that the procedure followed by the district court in this case was error? As far as I can tell, yes, Your Honor, yes. So then, on an abuse of discretion standard, am I not bound? I think that if you find abuse of discretion, you've got to. . . That's the standard. Yeah, on this one, yeah, you're right. Okay, yeah. There's no precedent saying, Judge, you've got to do it this way. There's no out-of-circuit precedent saying, Judge, you've got to do it this way. And so the judge does it the way he wants, the way he thinks he needs to do it. Then I'm having a tough time on abuse of discretion standard to say, well, you're all wet, Judge. Having been where he was before, I get pretty mad when the circuit undid me over abuse of discretion. Agreed, Your Honor. I just feel it should have been treated like a reread because it was the government's case for a fourth time, even though it was properly admitted into evidence. Although, for argument's sake, with a paper exhibit, suppose the defendant had written out a written confession and the writing is properly received into evidence. That written confession goes back to the jury room, correct? Correct. And the jury is free to . . . suppose the confession is ten pages long. The jury could look at the first page and read the first page over ten times, and they could say, well, we don't care about the next nine pages. We're not going to read those. We don't really care about that. Let's just read the first page as much as we want, eight or nine times. That's entirely appropriate for the jury to do, correct? Absolutely, Your Honor, and that's the problem I'm having, yes. So rather than it's a written statement, suppose it's a recorded statement, a recorded statement that's ten minutes long. If that goes into the jury room, couldn't the jury do the same thing? Wouldn't they be free to say, rather than writing, we just want to play the first minute of it, and let's stop it and look at it and discuss it and play it back several times. There's no requirement that they play the entire video from beginning to end during their deliberations, assuming no one else is present. Is that fair to say? It's fair to say. Again, though, a statement is just one portion of the trial, as opposed to a video or a recording. And in this case, it's the entire trial. It's the entire case. But what – I mean, that makes it relevant. It makes it probative. But what's the error? I mean, it's adverse to your client that it may be probative and persuasive, but what's the error in allowing a video to go to a jury room where the jury can decide we're going to play it several times or no times? I think that, again, because it was the lion's share of the government's case, they got to watch it again, and instead of inside of the courtroom with the court's control and with the defendant present, watch it the same way they watched it during trial. That's what I'm saying. But the defendant doesn't have a right to be present in the jury room during deliberations, does he? No. No. So, counsel, how do you distinguish this case from Doyle? I would have to think about that, Your Honor. Well, I mean, in Doyle, you know, there were 14 tapes admitted into evidence. They were taken into the jury room. The jury had the opportunity to listen to all or any portion of them, even though some of the tapes weren't even in the record at trial. That was the problem. But Doyle said no prejudice, even though they weren't in the record necessarily, but they had been admitted. It seemed like the admitted tapes was all that was important. It wasn't admitted or not. That's right, Your Honor. So how do I distinguish? It seems to me if I got Doyle from 1986, I'm kind of stuck. I think that actually watching somebody and listening to somebody are two different things. They got to watch his demeanor. And like Your Honor asked me before, he tried, like, you know what, to keep them away from that car. And I think that's what they wanted to watch again. Okay. Thank you, Your Honor. That's fair enough. Thank you. I think I'm out of time. Thank you, Your Honor. Thank you, counsel. Thank you for your argument. Thank you for being so straight with us and answering our questions. I appreciate that very much. Go ahead. Good morning, Your Honors. May it please the Court. John Sullivan for the United States. Just very briefly, Judge Hayes, that came up with respect to the second issue where the guns were located in respect to the drugs. On pages 18 and 19 of the record, Officer Ward testified that the guns, that the gun in the center console was 18 inches to 2 feet away from the guns, or from the drugs that were on the floorboard. So that enhancement was very appropriate in this case. It was not an abuse of discretion for the district court to apply that four-level enhancement. Now, turning to the watch card video issue, the general rule is that exhibits properly admitted into evidence are, the jury is entitled to review those. And this case is no exception. We're talking about a video that was properly admitted into evidence by stipulation at pretrial. And the jury watched the entire video during the course of the trial, and then it was submitted to the jury during deliberations. I think Judge Molloy really put it well at the district court when he said, we're looking at more of a technological issue here than a legal one. The fact that the jury had the video at first, they just simply needed a way to play the video. So that evidence was properly admitted. It was non-testimonial evidence, and the jury had every right to review it in the same way they would in every other, in all the other exhibits. I mean, I guess counsel, the worry I have, and maybe it's because of the lack of hair I have and the gray hair on the temples, it just never has seemed appropriate to allow the jury to have testimony that they can look at without meaning that it's going to overplay what that is or read back testimony. It's going to overplay. And we're looking at the prejudice it is to having some, if you will, piece of evidence that overplays in this particular situation. Could you speak to that? Because that's what we've tried to do over the years. And this is new technology, and it is in the jury room because it was properly admitted. But it seemed to be that we had a lot of evidence that we gave to a jury, but if they wanted to hear that evidence again, we made them come back in or we didn't read it because it was overplay. So distinguish that. Well, I guess I have two answers for your question. First of all, we're not talking about a readback of testimony in this case. We're talking about a substantive exhibit, and I think there's a real difference between testimony and evidence. And Judge Molloy, I think, put it well at the district court. You know, we're talking about a substantive exhibit here. We're not talking about reading back testimony. I think the issue becomes one of prejudice, perhaps. We're talking about testimonial evidence on one hand, where there's a real danger that it can be overemphasized in terms of one witness's testimony over the other. Here we're just watching a video of what actually happened. Judge Hayes pointed out that we're talking about highly probative evidence. This trial was very short, and really the jury only had one issue to decide, and that was whether Chatwell knowingly possessed the firearm. The video was very helpful in determining whether he knew that the firearms were in the car. So I think that there's a real difference between testimony and a substantive exhibit like we have here. What happens at the time of the action that makes it different? Can I use your same philosophy to say, from now on I'm never going to bring an expert. I'm going to go video the expert in far-off Australia, and I'm going to ask for it to be admitted. Why? So the jury then can hear what the expert says over and over and over again. I think that's a different case because we're talking about testimony, and the testimonial distinction I think is very important to remember. This video is not testimony. Is that your argument? That is my argument, Your Honor. What is it? It's just a substantive exhibit. I don't think that it's a cataloging of what actually happened at the scene, the traffic stop. I don't think that, first of all, it's non-testimonial evidence because two of the three officers who were present at the scene testified at trial. The statements made by Chatwell are non-testimonial as well. And then whatever statements remained, I think Brandon Robinson had a few things to say on the video. None of that material is for the truth of the matter asserted. So I take it, counsel, your position is that the video is just 801 D-2A admission by the defendant? Absolutely. The statements made by Chatwell. And then Rule 43 would only apply to actual in-courtroom testimony? Absolutely, Your Honor. So I don't think Rule 43 applies here at all because we're talking about an exhibit. There was no objection made at the trial court on Rule 43 basis. So if the court wants to consider that, I think you have to do so under a plain error standard. It's also important to remember that Chatwell wasn't even in the courtroom at the time that the video would have been replayed. So he was told by the district court that he could be present the following morning on the second day at trial. His counsel said that he recommended that he be there, and he wasn't even there in the courtroom. So had the court even played the video over again at trial, Chatwell himself waived that argument. So I think there's really two waivers when we talk about the Rule 43 issue. What do we do with KUPAU? That's an Idaho way to say it. K-U-P-A-U. Sure. Whatever that is. Well, Your Honor, in that case, we were talking about a harmless error. So if the district court did err in this case, I think that it was absolutely harmless, especially when you consider that the district court gave two cautionary instructions. Now, the government doesn't think that those are even necessary when we're talking about the jury looking at the evidence during deliberations. There's certainly no cautionary instruction that the jury should not look too closely at the guns that are in evidence. Excuse me, Counselor, you mentioned harmless error. Are you referring to harmless error in this case? I was referring to the KUPAU case, Your Honor. Although in that case, there was a Rule 43 violation, correct? That is correct, Your Honor. Although in this case, there can't be a Rule 43 violation because the tape was played, if it was played, in the privacy of the jury room with no outsiders present, correct? That's absolutely correct. So there just cannot be a Rule 43 violation when the tape is played in the jury room with no outsiders present? I believe that's accurate, Your Honor. I think the KUPAU case may say something slightly differently. We have a line of cases, you know, KUPAU, there's Brown, there's... The reason that I wanted you to think about KUPAU is there, the conversations with the defendant were recorded. They contradicted the defendant's testimony. They were played at trial and admitted into evidence, and the jury wanted to hear them again. And the court said, what, okay, as long as there's an FBI agent to play them? And, you know, I think that that is a real distinction between this case. We've got an FBI agent... I wanted to make sure you were focusing on that. Certainly. I think that the fact that there's the case agent in the courtroom alone with the jury is an entirely different case than what we have here, where they're allowed to watch the video again in the privacy of the jury room during deliberation. So I think that those two cautionary instructions that Judge Molloy gave cured any error. If there was any in the government's position, there was not, Your Honor. So I'd ask that the court affirm both the conviction and the sentence. And if there are any other questions, I will see the remainder of my time at Menson. Thank you. Thank you. We took all your time, but if you want to give us 30 seconds, we'll hear you. 30 seconds on firm intent, Your Honor. They added firm intent to emboldening role and proximity. And if firm intent and proximity meant the same thing, there would be no need to add firm intent. And if firm intent meant the same thing as the potential emboldening role, there would be no need to add that later. I'm just saying to the court that there's an absolute lack of truth in this case of firm intent. While we do have proximity and the potential emboldening role of a guideline, we don't have firm intent. So thank you, Your Honor. Thank you. Thank you for your argument, both of you. This case will be submitted.
judges: Hayes, Smith, Owens